| | |
|---|---|
| 1 | MARTIN D. BERN (SBN 153203) |
| | Martin.Bern@mto.com |
| 2 | MALCOLM A. HEINICKE (SBN 194174) |
| | Malcolm.Heinicke@mto.com |
| 3 | YUVAL MILLER (SBN 243492) |
| | Yuval.Miller@mto.com |
| 4 | MUNGER, TOLLES & OLSON LLP |
| | 560 Mission Street, Twenty-Seventh Floor |
| 5 | San Francisco, CA  94105-2907 |
| | Telephone:     (415) 512-4000 |
| 6 | Facsimile:      (415) 512-4077 |
| 7 | Attorneys for Defendant |
| | GUARDSMARK, LLC |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| PHILLIP TEMPLE, on behalf of himself, individually, and all others similarly situated, | CASE NO.  CV-09-2124-SI |
| Plaintiff, | **GUARDSMARK, LLC'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| GUARDSMARK, LLC, and DOES 1 through 100, INCLUSIVE, | Judge:       The Honorable Susan Illston |
| | Date:        December 18, 2009 |
| Defendant. | Time:        9:00 a.m. |
| | Location:   Courtroom 10, 19th Floor |

**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that on December 18, 2009 at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Susan Illston in Courtroom 10 of the above-entitled Court, located on the 19th floor of the Philip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Guardsmark, LLC will move for partial summary judgment pursuant to Fed. R. Civ. P. 56. Specifically, Guardsmark respectfully requests that this Court enter judgment in its favor with respect to Plaintiff's first cause of action, i.e., his claim related to alleged uniform reimbursement violations, and the associated portions of his second and third causes of action.

Partial summary judgment is appropriate here because Plaintiff's claim alleging that Guardsmark failed to reimburse him for uniform maintenance fails as a matter of law because Guardsmark provided Plaintiff with a uniform maintenance allowance, and Guardsmark provided Plaintiff, an at-will employee, with notice of how it would do so. In addition, Plaintiff's claim is barred by the pertinent statute of limitations. This Motion is based upon the Memorandum of Points and Authorities attached hereto, the Request for Judicial Notice submitted herewith, the Declaration of Ramona Martin submitted herewith, the pleadings and records on file in this action, and such additional authority and argument as may be presented in Guardsmark's reply and at any hearing on this Motion.

DATED: November 11, 2009

MUNGER, TOLLES & OLSON LLP
MARTIN D. BERN
MALCOLM A. HEINICKE
YUVAL MILLER


By:  /s/  *Malcolm A. Heinicke*
          MALCOLM A. HEINICKE

Attorneys for Defendant
GUARDSMARK, LLC

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1
II. PROCEDURAL BACKGROUND AND UNDISPUTED FACTS ................................... 3
    A. Plaintiff Was An At-Will Employee at Guardsmark ............................................. 3
    B. Guardsmark's Uniform And Uniform Maintenance Policies ................................ 3
    C. Guardsmark Changes Its Payment Policies In Response To The Morris Action ...................................................................................................................... 4
    D. Plaintiff Temple's Uniform-Related Claims In The Instant Action ...................... 5
III. ARGUMENT ..................................................................................................................... 6
    A. Summary Judgment On Plaintiff's Uniform Claim Is Appropriate Because California Law Permits Employers To Modify The Compensation Of At-Will Employees ...................................................................................................... 6
    B. Summary Judgment On Plaintiff's Uniform Claims Is Also Appropriate Because These Claims Are Time-Barred ............................................................. 10
IV. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Henry T. Wright v. Darrell Marlow Schock*,
  742 F.2d 541 (9th Cir. 1984) ............................................................................................. 6

*Thomas v. Home Depot USA, Inc.*,
  527 F. Supp. 2d 1003 (N.D. Cal. 2007) ........................................................................... 10

**STATE CASES**

*Asmus v. Pacific Bell*,
  23 Cal. 4th 1 (2000) ...................................................................................................... 8, 9

*Chinn v. China Nat. Aviation Corp.*,
  138 Cal. App. 2d 98 (1955) ............................................................................................... 9

*DiGiacinto v. Ameriko-Omserv Corp.*,
  59 Cal. App. 4th 629 (1997) ..................................................................................... 2, 8, 9

*Grisham v. Philip Morris U.S.A., Inc.*,
  40 Cal. 4th 623 (2007) .................................................................................................... 10

*In re Work Uniform Cases*,
  133 Cal. App. 4th 328 (2005) ........................................................................................... 8

*Murphy v. Kenneth Cole Productions, Inc.*,
  40 Cal. 4th 1094 (2007) .................................................................................................. 10

*Norgart v. Upjohn Co.*,
  21 Cal. 4th 383 (1999) .................................................................................................... 10

*Stieber v. Journal Pub. Co.*
  120 N.M. 270 (1995) ........................................................................................................ 8

**STATUTES AND RULES**

Cal. Bus. & Prof. Code § 17200 *et seq.* ..................................................................................... 5

Cal. Bus. & Prof. Code § 17208 ......................................................................................... 2, 10

Cal. Civ. Proc. Code § 338 .................................................................................................... 10

Cal. Civ. Proc. Code § 340(a) ................................................................................................ 10

Cal. Lab. Code § 2698 ................................................................................................. 5, 6, 10

Cal. Lab. Code § 2802 ........................................................................................................ 5, 6

Fed. R. Civ. P. 56(b) (Fed. R. Civ. P. 56(c)(1)(A) (effective December 1, 2009)) ..................... 6

**OTHER AUTHORITIES**

Cal. Reg. Code, § 11040(9)(A) ................................................................................................ 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Phillip Temple brings the present putative class action asserting: (1) uniform maintenance claims; and (2) rest period claims. First, Plaintiff Temple asserts that Guardsmark "failed to properly compensate for the costs of uniform maintenance for those security guards who were employees of Guardsmark" in California. First Amended Class Action Complaint [Docket Entry No. 6] ("FAC" or "Complaint") at ¶ 6. Specifically, Plaintiff alleges that Guardsmark "unlawfully deducted 25 cents per hour of the hourly pay of Plaintiff and the members of" the putative class to cover uniform costs. *Id.* ¶ 18. Second, Plaintiff Temple asserts that Guardsmark "requir[ed] Plaintiffs and class members to work without off-duty rest periods." *Id.* ¶ 24.[1] Through the instant motion, Guardsmark respectfully requests that the Court grant it partial summary judgment with respect to Plaintiff's first set of claims, i.e., his uniform maintenance claims. This motion does not address Plaintiff's rest period claims.

At all times during Plaintiff's employment with Guardsmark, the company directed Plaintiff to wear certain uniform items, which it provided at no cost to him. Prior to November 2004, and well before the time period at issue in this case, Guardsmark provided Plaintiff with a uniform maintenance allowance as part of his overall (i.e., combined) hourly pay rate. In response to disputed allegations in a lawsuit contending that California law prohibited Guardsmark's national policy of including its uniform maintenance allowance within the overall hourly wage paid to its security guards, Guardsmark changed its practice in California. Specifically, starting on November 14, 2004, Guardsmark switched to a practice whereby it separately paid and itemized (1) a base hourly wage rate, and (2) an hourly uniform maintenance allowance. In implementing this change with respect to Plaintiff (and others), Guardsmark reduced Plaintiff's base hourly wage rate by twenty-five cents and simultaneously began paying a new and separately-listed twenty-five cent per hour uniform maintenance allowance.

---

[1] Although the merits of these rest period claims are not before the Court on this motion, Guardsmark strenuously contests these allegations. Guardsmark has a policy and practice of authorizing and permitting rest periods in compliance with California law.

- 1 -  GUARDSMARK, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT; CASE CV-09-2124 SI

1  Guardsmark made this change prospectively, placing Plaintiff (and others) on written notice that
2  the change would take place.

3  Although unnecessary to the resolution of the legal issues presented by this
4  motion, Guardsmark notes that, as a practical matter, Plaintiff Temple's total hourly
5  compensation remained unchanged. Specifically, whereas Plaintiff received compensation at the
6  single hourly pay rate of $11.00 prior to the change, he subsequently received a base hourly wage
7  rate of $10.75 per hour as well as $0.25 per hour for uniform maintenance—i.e., a total hourly
8  pay rate of $11.00 per hour. As such, Plaintiff is misguided in his assertion that Guardsmark has
9  made improper "deduct[ion]s" from Plaintiff's wages.

10  Even if Plaintiff's misguided factual allegation were accepted, and the November
11  14, 2004 change in practice were characterized as a wage deduction (as opposed to a mere re-
12  allocation), it would still be the case that Guardsmark's actions were entirely lawful under
13  California law because Plaintiff was an at-will employee. *See DiGiacinto v. Ameriko-Omserv*
14  *Corp.*, 59 Cal. App. 4th 629, 635 (1997). As set forth in greater detail below, as long as it does
15  not violate minimum wage laws, an employer can prospectively and with notice revise and lower
16  the wages paid to its at-will employees. Nothing in the law prevents an employer from lowering
17  an at-will employee's wage rate on a prospective basis, and any rule to the contrary would defy
18  common sense and turn the principle of at-will employment on its head. Plaintiff was
19  indisputably an at-will employee, and Guardsmark provided him with notice of the prospective
20  change.

21  As a separate and independent basis for the instant motion, Guardsmark
22  respectfully submits that because Plaintiff claims that the November 14, 2004 change in his
23  formal wage structure was impermissible, and because Plaintiff was on notice of these changes in
24  2004, his claims are time-barred. Specifically, the longest possible limitations period for any of
25  the claims Plaintiff has pled is four years. *See* Cal. Bus. & Prof. Code § 17208. Plaintiff did not
26  file the instant action until 2009, so his challenge to the 2004 policy change is untimely.

27  For these reasons, Guardsmark respectfully requests that the Court grant the
28  instant motion and focus this case on Plaintiff's rest period claims.

- 2 -  GUARDSMARK, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT; CASE CV-09-2124 SI

## II. PROCEDURAL BACKGROUND AND UNDISPUTED FACTS

### A. Plaintiff Was An At-Will Employee at Guardsmark

Plaintiff Phillip Temple commenced employment as a security officer with Guardsmark in July 2003. *See* Declaration of Ramona Martin ("Martin Decl.") ¶ 2. From the outset of his employment, Plaintiff expressly agreed that his employment was "AT WILL," and thus was "not for any specified period of time," and could be terminated "at any time, with or without cause." *See id*. ¶ 2 & Exh. A at ¶ 1. The at-will nature of this agreement and Plaintiff's employment was not modified at any time during his employment with Guardsmark, which ended in February 2008. *See id*. ¶ 2; *see also* FAC at ¶ 8.

### B. Guardsmark's Uniform And Uniform Maintenance Policies

During his employment at Guardsmark, Plaintiff was instructed to wear certain Guardsmark uniform items when working at his assigned client account. Martin Decl. ¶ 3; *see* FAC at ¶ 17. The basic uniform consisted of a blazer, slacks and a white shirt, and Guardsmark provided these items to Plaintiff at no cost to him. *See* Martin Decl. ¶ 3. Over the course of Plaintiff's employment, Guardsmark had a policy of replacing uniform items due to normal wear and tear, again at no cost to employees. *Id.* In addition, Guardsmark directed employees like Plaintiff to keep their uniforms clean and presentable, and at all times during Plaintiff's employment provided him with funds for such uniform maintenance. *Id*.

When Plaintiff began his employment with Guardsmark in 2003, it was Guardsmark's policy to include the funds for uniform maintenance in the employee's overall pay rate. *Id*. ¶ 4. Specifically, Guardsmark's policy in California was the same as it was in other states—the uniform maintenance allowance was built into (but not specifically itemized within) a single hourly wage rate paid to security offices. *See id*. Guardsmark expressly advised security officers of this fact:

> Each security officer and supervisor must ensure that his or her uniform is clean and presentable at all times. Your hourly wage rate has been specifically computed to include a percentage of your pay to offset this expense.

- 3 -   GUARDSMARK, LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT; CASE CV-09-2124 SI

1 *Id*. Because the uniform maintenance payment was built into the hourly wage rate, it was not
2 separately paid or specifically itemized on the pay stubs that Plaintiff (or others) received in
3 2003. *Id*.

### C. **Guardsmark Changes Its Payment Policies In Response To The *Morris* Action**

On August 13, 2003, former Guardsmark security officers Glenn Morris and Michael Schladweiler commenced a putative class action claiming that the very same California laws on which Plaintiff Temple bases his claim here do not permit employers to include unspecified uniform maintenance allowances within an overall hourly wage. *See Morris vs. Guardsmark, Inc.*, Case No. 233252 (Superior Court, County of Sonoma).[2] Following initial litigation and discovery, the parties reached a class action settlement pursuant to which a class of all security officers in California (including Plaintiff Temple) released all possible claims for uniform maintenance payments and associated violations through January 5, 2005. *See* Request for Judicial Notice ("RJN") at Exh. 1 (judgment from *Morris* action demonstrating Plaintiff Temple did not opt out of the settlement).

In an effort to address the very issue raised in the *Morris* action, Guardsmark announced and subsequently implemented a new payment policy for its California security officers (including Plaintiff Temple) in November 2004. Specifically, Guardsmark sent every one of its security officers then employed in California a letter from Guardsmark Vice President and Manager of Human Resources Robert W. Overman, Ph.D. ("November 2004 notice"), explaining that the company would from that point forward separately list a uniform maintenance allowance on the payroll explanations provided to the officers. *See* Martin Decl. ¶ 5 & Exh. B. The letter explained that the hourly rate paid to officers had previously been calculated to include the uniform maintenance allowance, and further put the employees on notice of the new prospective payment practice:

---

[2] The California Supreme Court has since rejected the basic premise of the *Morris* action and held that an employer can, consistent with California Labor Code § 2802, include expense reimbursements within a single wage rate paid to the employee. *See Gattuso v. Harte-Hanks Shoppers, Inc.,* 42 Cal. 4th 554, 572-73 (2007). So, in this regard, the instant lawsuit boils down to an effort to penalize Guardsmark for adding a degree of disclosure and transparency to its compensation practices that, as it now turns out, it may never have been required to add.

> [E]ffective with the pay period beginning November 14, 2004, your uniform maintenance allowance will be listed separately on your pay statement rather than being in your hourly wage rate. The uniform maintenance allowance is $0.25 per hour, and the amount stated in your hourly wage rate will be reduced by $0.25 per hour - **the total amount you receive per hour worked remains the same**. This will not result in any change in pay for hours worked, since the sum of your new hourly pay rate plus your separately stated uniform maintenance allowance will equal your current hourly pay rate.

*Id*. In other words, although it felt strongly that it had a legal basis for continuing its earlier practices, Guardsmark chose to avoid any uncertainty and implemented the change the *Morris* plaintiffs contended was necessary to comply with California law.

Beginning with the November 14, 2004 pay period, Guardsmark implemented the policy changes about which it had advised its security officers. In the specific case of Plaintiff Temple, starting with the December 3, 2004 pay date, he was no longer paid a single hourly wage rate of $11.00. *See id*. ¶ 7. Instead, Guardsmark paid him: (1) a standard hourly wage rate of $10.75; and (2) a separately itemized uniform maintenance allowance payment of twenty-five cents per hour. *Id*. Plaintiff Temple received a separately stated uniform maintenance allowance (itemized on his paystubs) for the remainder of his employment, during which his base hourly wage rate was never lowered. *See id.*

### D. **Plaintiff Temple's Uniform-Related Claims In The Instant Action**

Now, more than four years after Guardsmark's November 14, 2004 change in policy was first announced and then implemented, Plaintiff brings this action alleging that the change constituted the commencement of "a bi-monthly pay practice whereby [Guardsmark] unlawfully deducted 25 cents per hour of the hourly pay of Plaintiff and the members of [the putative class] as the cost borne to Plaintiff and the members of [the class] to maintain their required uniforms." *See* FAC at ¶ 18. Based on this allegation, Plaintiff's first cause of action purports to state a claim under California Labor Code § 2802 and California Code of Regulations Title 8, § 11040(9)(A). *See* FAC at ¶¶ 16-19. In addition, Plaintiff attempts to utilize these same factual allegations as predicates for alleged violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*., and the California Labor Code Private

1  Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698.  *See* FAC at ¶¶ 21, 29.

2  In the recently filed Joint Case Management Statement, Plaintiff clarified the legal
3  issue at the heart of his claim.  Through that pleading, the parties agreed "that central to this case
4  is the legal issue of whether California Labor Code § 2802, which provides in relevant part that
5  '[a]n employer shall indemnify his or her employee for all necessary expenditures or losses
6  incurred by the employee in direct consequence of the discharge of his or her duties,' prohibits
7  an employer from prospectively lowering an at-will employee's wages with notice while at the
8  same time starting to pay a corresponding uniform maintenance allowance."  Joint Case
9  Management Statement [Docket Entry No. 29] at 2.  In other words, Plaintiff essentially claims
10 that it was unlawful for Guardsmark to prospectively re-structure his compensation and pay him
11 both a base hourly wage rate and a separate uniform maintenance allowance, even though
12 Guardsmark provided Plaintiff with express notice that this was exactly what it was going to do.
13 It appears Plaintiff is alleging that, regardless of his at-will status, Guardsmark was somehow
14 required to pay Plaintiff an additional (new) twenty-five cents per hour, and could not
15 prospectively adjust his base wage rate.

16 **III.    ARGUMENT**

17 A defendant may seek summary judgment on any claims "at any time."  Fed. R.
18 Civ. P. 56(b) (Fed. R. Civ. P. 56(c)(1)(A) (effective December 1, 2009)).  Even when, as here, the
19 claim at issue has been pled on a putative class basis, it is "reasonable to consider a Rule 56
20 motion first when early resolution of a motion for summary judgment seems likely to protect both
21 the parties and the court from needless and costly further litigation."  *Henry T. Wright v. Darrell*
22 *Marlow Schock,* 742 F.2d 541, 544 (9th Cir. 1984).  Guardsmark recognizes that the relief it seeks
23 will bind Plaintiff only and will not result in a judgment against the putative class.  Summary
24 judgment is appropriate for two independently sufficient reasons.

25      **A.    Summary Judgment On Plaintiff's Uniform Claim Is Appropriate Because
              California Law Permits Employers To Modify The Compensation Of At-Will**
26            **Employees**

27 The parties agree "that central to this case is the legal issue of whether California
28 Labor Code § 2802, which provides in relevant part that '[a]n employer shall indemnify his or her

- 6 -     GUARDSMARK, LLC'S MOTION FOR PARTIAL
          SUMMARY JUDGMENT; CASE CV-09-2124 SI

employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties,' prohibits an employer from prospectively lowering an at-will employee's wages with notice while at the same time starting to pay a corresponding uniform maintenance allowance." Joint Case Management Statement [Docket Entry No. 29] at 2. In other words, plaintiff contends that it was somehow unlawful for Guardsmark to prospectively re-structure his compensation and pay him both a base hourly wage rate and a separate uniform maintenance allowance, even though Guardsmark provided Plaintiff with written notice that it was making these changes to the structure of his compensation. Indeed, Plaintiff appears to contend that, in November 2004, Guardsmark was required to leave unchanged Plaintiff's prior hourly wage rate (which included a uniform maintenance allowance) and pay him another twenty-five cents per hour as an additional uniform maintenance allowance. Plaintiff's claim fails as a matter of law because, contrary to his claim, California law permits an employer to change the compensation of an at-will employee on a prospective basis.

As an initial matter, and though not necessary to the instant motion, it bears emphasis that that Plaintiff's overall hourly compensation was not reduced on November 14, 2004. In Guardsmark's November 2004 notice, the company explained that it prospectively would restructure its hourly compensation so that its uniform maintenance allowance, which previously had been included as part of the hourly wage on employee pay statements, would now be separately paid and separately stated on bi-weekly paystubs. *See* Martin Decl. ¶ 5 & Exh. B; *supra* pp. 4-5. The letter informed Plaintiff that the "uniform maintenance allowance w[ould] be listed separately on [his] pay statement rather than being in [his] hourly wage rate," and that this change would "provide a clearer picture of [his] compensation and enable [him] to see in greater detail the amount received for [his] uniform maintenance allowance." Martin Decl. ¶ 5 & Exh. B. Indeed, the November 2004 notice provided in detail that the change would "not result in any change in pay for hours worked" because "the sum of [Plaintiff's] new hourly pay rate plus [his] separately stated uniform maintenance allowance w[ould] equal [his previous] hourly pay rate." *Id*. Thus, the letter put Plaintiff on notice of the new payment practice.

Guardsmark implemented these changes beginning with the pay period

commencing on November 14, 2004. Accordingly, Plaintiff received a pay statement on December 3, 2004, and bi-weekly thereafter, reflecting his reduced base wage and the separately itemized uniform allowance payment. *See* Martin Decl. ¶ 7.[3] Guardsmark provided Plaintiff with a uniform maintenance allowance in this fashion throughout the four years prior to the filing of the Complaint. *See id*. In addition, Plaintiff's base hourly wage rate was never lowered during the four years prior to the filing of the complaint. *See id*. Thus, Guardsmark's modification to Plaintiff's at-will employment agreement on November 14, 2004 did not reduce his total compensation per hour. It merely provided him with more detail about the components of his hourly compensation structure, which were then itemized in his future pay statements. *Cf. In re Work Uniform Cases*, 133 Cal. App. 4th 328, 337 (2005) ("[P]ayment for employee uniforms is a component of employee compensation.").

In addition, even if Guardsmark's policy change could be characterized as a wage reduction (as Plaintiff urges), it would have been permissible under California law. Because Plaintiff was an at-will employee at Guardsmark, modifications to his employment agreement and associated compensation were entirely permissible, provided such measures were taken (as they were here) prospectively and with notice. *See Asmus v. Pacific Bell,* 23 Cal. 4th 1, 11 (2000); *DiGiacinto v. Ameriko-Omserv Corp.*, 59 Cal. App. 4th 629, 635 (1997). In California, "'an employer's right to terminate an employee at will necessarily and logically includes what may be viewed as a lesser-included right to insist upon prospective changes in the terms of that employment as condition of continued employment.'" *DiGiacinto*, 59 Cal. App. 4th at 636-37 (quoting *Stieber v. Journal Pub. Co.* 120 N.M. 270, 273 (1995)). Thus, an at-will employee such as Plaintiff "who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions." *Id*. at 637; *Asmus,* 23 Cal. 4th at 14. Even if an employment agreement explicitly provides for a

---

[3] The Service Employees International Union (SEIU), which represents Guardsmark employees, now demands from all security companies in the San Francisco Bay Area the type of itemization Guardsmark unilaterally established in 2004: "If a Company presently provides uniform maintenance reimbursement as part of an employee's hourly wage rate, it shall separate such reimbursement payment from the hourly wage rate and show the apportionment on the employee's check stub." Martin Decl. ¶ 6 & Exh. C at Article 15.5.

*specific wage rate*, the "employer of an at-will employee can unilaterally change the compensation agreement" to reduce that wage rate. *DiGiacinto*, 59 Cal. App. 4th at 636.

The California Supreme Court has confirmed this principle, explaining that continuing at-will employment is sufficient consideration to create a new contract, and that an employee accepts the new contract by continuing to work:

> The general rule governing the proper termination of unilateral contracts is that once the promisor determines after a reasonable time that it will terminate or modify the contract, and provides employees with reasonable notice of the change, additional consideration is not required . . . . In the unilateral contract context, there is no mutuality of obligation. For an effective modification, there is consideration in the form of continued employee services.

*Asmus,* 23 Cal. 4th at 14-15 (citations omitted); *see also Chinn v. China Nat. Aviation Corp.*, 138 Cal. App. 2d 98, 101 (1955) ("[T]he adopting of the plan by the employer constituted an offer of a contract which was accepted by the employee by continuing in the employment, and . . . such continuance in employment constituted consideration requiring the plan's enforcement.").

In *DiGiacinto*, an employee had entered into an at-will employment agreement providing for a specific wage rate, and the employer subsequently sent the employee a letter providing that the rate was being reduced. 59 Cal. App. 4th at 635. The employee brought suit, contending that the modification constituted a breach of his initial at-will employment contract. Rejecting this argument, the court held that the letter given to the employee "must be considered to constitute the employer's notice of termination of the old at-will employment contract and an offer of a unilateral contract under new terms." *Id*. at 639. The employee, in turn, accepted the new, lower wage by continuing to work for the employer. *Id*. at 635. As the court explained, "[c]ontinuing an employment to which one is not bound by contract is as clearly consideration as is entering the employment in the first place." *Id*.

As in *DiGiacinto*, Guardsmark's modification of Plaintiff's compensation agreement was entirely lawful. If Plaintiff was unhappy in any manner with the modification, he was free to decline continued employment on the new terms. Instead, he continued to accept employment with Guardsmark, thereby accepting those modified terms.

In sum, the parties have agreed that the key legal issue presented by this claim is whether California law "prohibits an employer from prospectively lowering an at-will employee's wages with notice while at the same time starting to pay a corresponding uniform maintenance allowance." Joint Case Management Statement [Docket Entry No. 29] at 2. Under California law, the answer is no, and therefore Plaintiff's claims fail as a matter of law.

### B. Summary Judgment On Plaintiff's Uniform Claims Is Also Appropriate Because These Claims Are Time-Barred

Guardsmark modified Plaintiff's compensation structure under his at-will employment agreement on November 14, 2004—more than four years before he filed his Complaint on June 18, 2009. The longest statute of limitations applicable to any of Plaintiff's causes of action is four years. *See Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 639 (2007) (citing Cal. Bus. & Prof. Code § 17208) (four-year statute of limitations applies to UCL action); *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1102 (2007) (citing Cal. Civ. Proc. Code § 338) (three-year statute of limitations applies to actions to recover wages); *Thomas v. Home Depot USA, Inc.*, 527 F. Supp. 2d 1003, 1008 (N.D. Cal. 2007) (citing Cal. Civ. Proc. Code § 340(a)) (one-year statute of limitations applies to PAGA claims for civil penalties). Therefore, any challenge to the November 14, 2004 policy changes is untimely.

A cause of action accrues, and the statute of limitations begins to run, "'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.'" *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (citation omitted). Here, Plaintiff alleges that on "November 14, 2004, Guardsmark began a bi-monthly pay practice whereby it unlawfully deducted 25 cents per hour of the hourly pay of Plaintiff." FAC at ¶¶ 18, 21. The November 2004 notice sent to Plaintiff informed him that Guardsmark was prospectively modifying the terms of his employment and explicitly stated how Guardsmark would determine his "new hourly pay rate." Martin Decl. ¶ 5 & Exh. B. The changes to Plaintiff's compensation terms were implemented for the pay period following the notice, and each bi-weekly paystub he subsequently received specifically stated his wage rate and the separately identified uniform maintenance allowance. Martin Decl. ¶ 7. As such, even if

Guardsmark's modification of Plaintiff's compensation agreement could be deemed "wrongful" in some respect, Plaintiff was put on notice of that "wrong" in 2004, and the statute of limitations began to run then.  Thus, Plaintiff's first cause of action, as well as his second and third causes of action insofar as they relate to Plaintiff's uniform claims, are time-barred because he did not file this action until 2009.

## IV. CONCLUSION

For each of the foregoing reasons, Guardsmark respectfully requests that the Court grant partial summary judgment with respect to Plaintiff's First Cause of Action, and with respect to those aspects of his Second and Third Causes of Action insofar as they relate to uniforms.

DATED: November 11, 2009

MUNGER, TOLLES & OLSON LLP
MARTIN D. BERN
MALCOLM A. HEINICKE
YUVAL MILLER

By: /s/ *Malcolm A. Heinicke*
MALCOLM A. HEINICKE

Attorneys for Defendant
GUARDSMARK, LLC

- 11 - GUARDSMARK, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT; CASE CV-09-2124 SI