1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    PHILLIP TEMPLE, on behalf of himself              No. C 09-02124 SI
     individually and all others similarly situated,
9                                                      **ORDER GRANTING DEFENDANT'S**
              Plaintiffs,                              **MOTION FOR PARTIAL SUMMARY**
10                                                     **JUDGMENT**
        v.
11
     GUARDSMARK, LLC, et al.,
12
              Defendants.
13   _____/

14
             Presently before the Court is defendant's motion for partial summary judgment on plaintiff's
15
     uniform reimbursement claim.  Having considered the papers submitted, and for good cause shown, the
16
     Court hereby GRANTS defendant's motion.
17

18
                                            **BACKGROUND**
19
             Plaintiff Phillip Temple was employed as a security guard by defendant Guardsmark, LLC from
20
     July 27, 2003 to March 13, 2008.  Temple Decl. ¶ 2.  Plaintiff was employed on an at-will basis,
21
     meaning that his position did not come with a "contract or guarantee of employment for any specified
22
     period of time" and could be terminated "at any time, with or without cause."  Employment Agreement,
23
     ex. A to Martin Decl., at 24.
24
             Plaintiff and other security guards were required to wear a uniform consisting of a blazer, slacks,
25
     and a white shirt, and to keep this uniform "clean and presentable" at all times.  Martin Decl. ¶ 3.
26
     According to defendant's Human Resources Service Manager, it was defendant's policy at the time
27
     plaintiff began his employment "to include (but not specifically itemize) the funds for uniform
28

*United States District Court*
*For the Northern District of California*

maintenance in the employee's hourly pay rate." *Id.* ¶ 4.  Defendant notified security guards of this fact in their employment agreements. *Id.* ¶ 7; Temple Decl. ¶ 3.  As of February 2004, plaintiff was paid at an hourly rate of $11 per hour.  Temple Decl. ¶ 2.  It is undisputed that plaintiff's pay statements did not specify which portion of this amount comprised his uniform maintenance allowance.

In 2003, two Guardsmark security guards filed a class action lawsuit in California state court, alleging that defendant failed to provide its employees funds for the maintenance of their uniforms. *Morris v. Guardsmark, Inc.*, No. 233252 (Sonoma County Super. Ct.).  Plaintiff was a member of the *Morris* class, which ultimately settled with defendant in December 2004 for $2 million.  *See* Stipulation Re: Settlement, ex. A to Bern Decl., at 6.  As part of the settlement, the class members agreed to release all claims up through the time of approval of the settlement, which was January 5, 2005.  *Id.* ex. 1.

As a result of the *Morris* litigation, defendant implemented a new uniform reimbursement policy in November 2004.  Defendant sent a notice to its California security guards which stated the following:

> [Y]our hourly wage rate has always included a uniform maintenance allowance.  For each hour paid, you receive an allowance for maintaining your uniform. . . . [E]ffective with the pay period beginning November 14, 2004, your uniform maintenance allowance will be listed separately on your pay statement rather than being in your hourly wage rate.  The uniform maintenance allowance is $0.25 per hour, and the amount stated in your hourly wage rate will be reduced by $0.25 per hour – **the total amount you receive per hour worked remains the same.**

Nov. 14, 2004 Letter, ex. B to Martin Decl. (original emphasis).  After the change in payment practice, plaintiff continued to receive $11 per hour, but his new pay statements itemized his earnings, showing that he was earning $10.75 per hour as a base wage and $0.25 per hour for uniform maintenance.  Martin Decl. ¶ 7.

Plaintiff filed the present action on May 14, 2009, challenging, among other things, defendant's uniform reimbursement policy.[1]  Plaintiff's claim is asserted on behalf of a class of all California security guards employed by defendant from four years prior to the filing of the complaint to the present who "received a 25 cent reduction in wages beginning on or about November 14, 2004."  First Amended Complaint ("FAC") ¶ 10a.  Plaintiff asserts that defendant's reimbursement policy constituted a violation of California Labor Code § 2802, California Wage Order No. 4-2001, and California's Unfair

---

[1] Plaintiff also alleges that defendant failed to provide accurate pay statements and compensate its employees for rest breaks, but these claims are not at issue in the present motion.

Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*  Plaintiff seeks various remedies including statutory penalties under California Labor Code § 2698.

Presently before the Court is defendant's motion for partial summary judgment on the uniform reimbursement claim.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party and all justifiable inferences must be drawn in its favor.  *Id.* at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment."  *Id.*  However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

Defendant seeks summary judgment on plaintiff's claim that defendant failed to provide reimbursement for maintenance of uniforms.  Defendant asserts that it is entitled to judgment as a matter of law because, pursuant to its November 14, 2004 policy, it paid plaintiff a separately enumerated uniform allowance as well as a modified hourly wage which it was permitted to reduce due to plaintiff's status as an at-will employee.  The essence of plaintiff's theory in opposition to defendant's motion is

United States District Court

For the Northern District of California

1   that, in altering its pay practices, defendant effected an impermissible "deduction" in plaintiff's wages,

2   thereby shifting the cost of uniform maintenance onto plaintiff.

3         The parties agree that, prior to November 14, 2004, plaintiff was compensated at an hourly rate

4   of $11.[2]  The notice sent on November 14, 2004 informed plaintiff that defendant was altering its

5   payment policy, resulting in a new base wage of $10.75 per hour and a uniform maintenance allowance

6   of $0.25 per hour.  Plaintiff does not contest that he received this notice, or that the new compensation

7   structure was reflected in each of his pay stubs after November 14, 2004.  *See* Martin Decl. ¶ 7.

8   Nonetheless, plaintiff asserts that his base wage actually remained at $11 per hour even after the

9   November 14, 2004 policy change, and that on some later date, defendant "illegally deducted" $0.25

10  per hour from this wage, essentially forcing plaintiff to pay for uniform maintenance out of his own

11  pocket.  Plaintiff does not clearly explain the basis for his "deduction" theory, but defendant agrees that

12  California law prohibits an employer from making after-the-fact deductions from wages already

13  promised and earned.  *See* Reply at 6 (citing *Kerr's Catering Serv. v. Dep't of Indus. Rel.*, 19 Cal. Rptr.

14  492, 497 (Cal. Ct. App. 1962)).

15        Plaintiff argues that "[t]here is no basis for Guardsmark's assertion that undisputed facts

16  establish it reduced Temple's hourly rate of pay from $11.00 per hour to $10.75 per hour effective

17  November 14, 2004." Oppo. at 19.  However, plaintiff does not actually submit any evidence in support

18  of his theory other than the following statement in his declaration: "My hourly rate of pay as

19  compensation to me for my labor only, $11.00, did not change after November 14, 2004.  It remained

20  the same as before November 14, 2004, $11.00 per hour worked." Temple Decl. ¶ 4.  This statement,

21  which consists of plaintiff's unsupported speculation as to the nature of his pay, is insufficient to defeat

22  summary judgment.  *See Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003)

23

24        [2] Plaintiff seeks a ruling that his "pre-November 14, 2004 hourly rate constituted wages alone"
    and did not include the uniform allowance required by law. Oppo. at 13. By the terms of plaintiff's own

25  complaint, however, this case involves a challenge to the new pay policy that began on November 14,
    2004.  Even assuming the prior practice was unlawful, that issue is not before the Court in this lawsuit.

26  To the extent some discussion of defendant's prior pay practice is warranted, the Court simply notes that
    plaintiff does not contest that he received notice when he commenced his employment that his hourly

27  rate included a uniform maintenance allowance.  The Court expresses no view on whether defendant's
    failure to specify how much of plaintiff's pay was intended to serve as a uniform allowance or how this

28  portion was calculated was lawful under California law as it existed at the time.

United States District Court
For the Northern District of California

("Conclusory allegations unsupported by factual data cannot defeat summary judgment."). In addition, plaintiff admits elsewhere in his declaration that after November 14, 2004, defendant paid him $0.25 per hour for uniform maintenance. Temple Decl. ¶ 7. Accordingly, the Court concludes that plaintiff has failed to raise a triable issue of fact on his claim that defendant effected an impermissible after-the-fact "deduction" of his wages.

The Court must now assess whether defendant's actions in reducing plaintiff's base wage and adding an hourly uniform allowance were permissible as a matter of law. Plaintiff does not dispute that he was an at-will employee during the relevant time period. Under California law, an employer is permitted to change the terms of an at-will employee's employment, and the employee's continued performance constitutes an acceptance of the new terms. *Asmus v. Pac. Bell*, 999 P.2d 71, 76 (Cal. 2000) ("California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment"); *DiGiacinto v. Ameriko-Onserv Corp.*, 69 Cal. Rptr. 2d 300, 304 (Cal. Ct. App. 1997) ("[A]n employer of an at-will employee can unilaterally change the compensation agreement without being in breach of the employment agreement. . . . [W]ith respect to an at-will employee, the employer can terminate the old contract and make an offer for a unilateral contract under new terms."). Plaintiff does not contest that he received the November 14, 2004 notice informing employees of the prospective change in pay practice, and that he continued to work for defendant for more than three years thereafter.

Plaintiff asserts that his continued performance did not constitute an acceptance of the new terms of compensation because, under California labor law, a contract that purports to waive an employee's statutory right to compensation is void. Oppo. at 19 (citing Cal. Lab. Code § 2804 ("Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void.")). Plaintiff does not explain, however, how defendant's new compensation policy required him to "waive" his right to uniform reimbursement. The plain language of the November 14, 2004 notice does not support the interpretation that defendant was asking its employees to waive any right to compensation. Rather, the notice announced a method of specifying the apportionment of that compensation. Under California law, a court should not construe an employment contract as effecting an improper waiver of a nonwaivable right unless that waiver is stated in express

terms. *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 292-93 (Cal. 2008) (finding no waiver of statutory right to indemnity for claims resulting from the employees' acts within the scope of employment, even though release employee was asked to sign referred to waiver of "any and all" claims against employer). The November 14, 2004 notice did not expressly state or even imply that employees were required to waive the right to uniform maintenance payments. Plaintiff's position is thus untenable.

Because defendant has shown that there are no material disputes of fact and it is entitled to judgment as a matter of law, the Court GRANTS defendant's motion for partial summary judgment on plaintiff's First Cause of Action and the portions of his Second and Third Causes of Action that pertain to his uniform reimbursement claim.

## CONCLUSION

For the foregoing reasons, defendant's motion for partial summary judgment is GRANTED. (Docket No. 33).

**IT IS SO ORDERED.**

Dated: April 7, 2010

_____
SUSAN ILLSTON
United States District Judge