IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP TEMPLE, | No. C 09-02124 SI |
| Plaintiff, | **ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND GRANTING DEFENDANT'S MOTION TO DENY CLASS CERTIFICATION** |
| v. | |
| GUARDSMARK LLC, | |
| Defendant. | |

On February 18, 2011, the Court heard argument on plaintiffs' Motion for Class Certification and defendant's Motion to Deny Class Certification. Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES plaintiffs' motion and GRANTS defendant's motion.[1]

**BACKGROUND**

In this proposed class action, named plaintiffs Phillip Temple and Johnny McFarland bring several claims against defendant Guardsmark, which employed plaintiffs to work as security guards for third party clients. On May 14, 2009, plaintiff Temple filed a class action complaint making a variety of allegations of violation of California law relating defendant's method of payment for the maintenance of uniforms and its alleged failure to provide appropriate rest periods. Compl. (Doc. 1); First Am. Compl. (Doc. 6). Among other things, and in relation to the uniform maintenance claim, plaintiff Temple alleged that defendant failed to provide "accurate wage statements." *See* Compl. at ¶ 13. On April 7, 2010, the Court granted summary judgment to defendant on the claim of failure to provide

---

[1] Because the arguments raised in and evidence presented with the two motions overlap to a considerable degree, the Court will analyze the question of class certification only once

reimbursement for maintenance of uniforms. Doc. 51.

On June 23, 2010, plaintiff Temple filed a second amended class action complaint in which Johnny McFarland was named as a plaintiff for the first time. Although defendant stipulated that it did not oppose the Court granting plaintiff leave to file the second amended complaint, defendant did reserve its right to make statute of limitations-based arguments. Doc. 66.

In this operative complaint, plaintiffs attempt to bring two claims on behalf of two subclasses of California employees who worked shifts during which they were the sole Guardsmark security officer at the client site. Plaintiffs would bring one set of claims based on defendant's alleged failure to provide ten minute rest periods as required by California law. *See* Second Amended Complaint (doc. 69).[2] Both named plaintiffs argue that defendant required security guards working alone to be alert and attentive at all times, which effectively precluded them from being able to take proper "off duty" rest periods. Plaintiff McFarland would bring a second set of claims based on defendant's alleged failure to provide accurate wage statements with respect to overtime. *Id.* Plaintiff McFarland argues that the wage statements produced by defendant do not have a double over time column—that is, a separate statement of the number of hours worked for which the employee is entitled under California law to two times the employee's regular rate of pay.

**I.     Facts regarding the rest period claim**

**A.     Policies**

Defendant has certain written policies that both defendant and plaintiffs agree apply to the prospective class members. These policies are contained in (1) a national policy handbook called General Orders, Regulations And Instructions For Uniform Personnel ("GORI"); (2) a California employee manual called "Guardsmark means this to you"; and (3) individual Mission Partnership Statements ("MPSs") that exist for each of defendant's clients. In addition, California employees who are scheduled to work shifts by themselves sign agreements foregoing their right to an off-duty meal

---

[2] In 2006, the District Court for the Central District of California denied a motion for class certification in a case brought against defendant that raised a similar claim. *See Lanzarone v. Guardsmark Holdings, Inc.*, No. CV06-1136, 2006 WL 4393465 (C.D. Cal. Sept. 7, 2006).

2

period.  Qualls Decl., Ex. D.

### 1. The GORI

In relevant part, the GORI discusses what it means for a security officer to be "On Duty."  It first provides that an officer is "On Duty" until "properly relieved . . . at the specified time, or on instruction of [a] superior officer, or on instruction of a client."  Qualls Decl., Ex. B, at 22.  It then defines being "On Duty" to mean a variety of things, including "remain[ing] on duty the full time called for or until properly relieved"; "be[ing] alert and carefully watch[ing] everything in your area of responsibility"; "tak[ing] quick and proper action when the situation requires it; report[ing] to your superior at once all information, complaints or observations about protection problems."  *Id.* at 22–23.  In contrast, an "On Duty" officer must *not* "smoke," except in certain areas; "carry any reading material, radios, television sets, tape recorders, tools or other material on the job site except that provided by Guardsmark or furnished by the client"; "sleep"; "lean against walls or objects"; "let . . . any person . . . go through a gate or enter a restricted area in violation of regulations"; "leave your post except when properly relieved, or with permission of your superior officer or supervisor, or when told to do so by the client, or to act on a complaint, to assist an injured person, or in case of a fire or similar situations" (and "[i]f you leave your post for these reasons, you must notify another Guardsmark employee or the client and take whatever steps are necessary for the protection of your post while you are absent"); "eat or drink while on duty unless authorized by the Manger in Charge."  *Id.* at 23–24.

### 2. Guardsmark means this to you

The California employee manual "Guardsmark means this to you" contains a more specific statement about rest periods.  The manual was amended during the class period.  From 2005 until 2008, the manual stated:

> Separate and apart from meal breaks, all security officers are also required to take ten-minute off-duty rest breaks for every four hours worked. . . . Under no circumstances are you to skip or shorten your rest breaks. . . . Your site supervisor or manager may provide instruction on when breaks should be taken.

East Decl. Ex. B at 4.  From 2008 until the present, the manual stated:

> Separate and apart from meal periods, and regardless of any other instructions, all California security officers are authorized and permitted to take rest periods of at least ten minutes in length once during every four-hour period worked. . . . If a rest break is interrupted due to an emergency or client need, the affected officer is authorized and permitted to take a new and complete ten-minute rest period in place of the interrupted rest period.
>
> Your supervisor may provide site specific instructions on where or when, during your shift, such rest periods may or may not be taken. If you feel you are not receiving proper rest periods, you should contact your supervisor, Manager or Manager in Charge. Officers are paid during rest periods, and unless instructed otherwise, are to remain at or near the client account during rest periods. . . . In order to ensure that officers remain alert, Guardsmark encourages officers to take all of their allotted rest periods for the full ten minutes each.

*Id.* Ex. A at 3–4.

### 3. Mission Partnership Statements

The parties did not provide the Court with copies of the MPSs. However, they did stipulate that the MPSs in California all contain the following provision:

> As a security officer, you must be mentally capable of responding quickly to instructions and remain constantly alert at your post, ready to react to any situation. Carry out orders promptly. Be an astute observer. And *never* sleep on the job.

Qualls Decl. Ex. A at ¶ 3 (emphasis in original).

### 4. Signed off-duty meal break waivers

California employees who are scheduled to work shifts by themselves sign agreements forgoing their right to an off-duty meal period. Qualls Decl., Ex. D. These agreements refer to the "nature of the work" as sometimes preventing solo shift workers from being able to take off-duty meal periods.

### B. Practices

The record before the Court also contains a variety of declarations from individuals who are prospective class members, each discussing how and why that employee did or did not take rest breaks.[3]

---

[3] Plaintiffs object to the admissibility of the 96 declarations submitted by defendant. Defendant first disclosed the identity of the 96 declarants as people with knowledge about the case in a supplemental disclosure filed November 4, 2010, the same day as defendant filed its motion to deny class certification and the accompanying declarations. Plaintiffs object that this was not "a timely" supplement, as required by Federal Rule of Civil Procedure 26(e)(1). They argue that it interfered with

4

### 1. Plaintiffs' declarations

Plaintiff presents fourteen declarations from individuals who would be members of the class. *See* Index of Decl. of Proposed Class Members & Exs. A–N (Doc. 108). The employees state that they were required to remain "on-duty" throughout their solo shifts, which some explain meant that they were required to remain alert and attentive to, and actively observe, site conditions. *Id.* Of these fourteen employees, seven (including the two named plaintiffs) worked in the San Francisco Bay Area and had Mike Kahrimanian as a supervisor at some point. *Id.* Exs. A, B, D, E, F, J, K. Many credit Kahrimanian specifically as telling them to remain alert during their rest periods. *See, e.g., id.* Ex. D ¶ 2. Two worked in Palm Springs. *Id.* Exs. G, H. The remaining five worked in one or more of the following offices: San Diego, Oakland, San Francisco, Orange County, and San Mateo. *Id.* Exs. C, I, L, M, N.

### 2. Defendant's declarations

Defendant submits declarations from 96 employees who are potential class members. Doc. 93. All attest that they worked solo shifts and were "authorized and permitted" to take rest breaks. All explain how it was that they were able to go off duty even though they were working alone. Some closed their posts and/or left them unattended. Some were relieved by clients. Some put up a sign. Some spent their breaks in the security office or breakroom. Each declaration also includes a sentence that begins with "During my rest breaks, I generally like to...." Different employees indicate that they

---

plaintiffs' ability to conduct discovery, especially since defendant had refused to provide plaintiffs with the identities of putative class members during discovery, and so there was no other way for plaintiffs to learn about these declarants.

Defendant replies by arguing, in essence, that class action litigation is always conducted this way. Defendant also argues that plaintiffs could have gotten the names of prospective class members by agreeing to a compromise proposed by defendant, or by moving to compel production; that plaintiffs also disclosed the identity of their declarants at the last moment; and that plaintiffs could have attempted to conduct further discovery in the four months since the 96 names were disclosed, but that it has chosen not to.

Without condoning the method in which defendant conducted disclosure or discovery in any way, the Court denies plaintiffs' request to exclude the declarations. It does not appear that plaintiffs were harmed by the tardiness of the disclosure. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 n.1 (9th Cir. 2001) (citing Fed. R. Civ. P. 37(c)(1)). The Court would have been more sympathetic to plaintiffs' objection if, instead of merely objecting to the declarations two months after they were filed, plaintiff had attempted to depose the declarants to test their assertions, or if plaintiff had worked more diligently to secure the names and contact information of a broader swath of potential class members.

1 generally like to go to the breakroom, make phone calls, listen to an MP3 player, read a newspaper, sit
2 down, have a snack or drink, take a walk, read, smoke a cigarette, watch tv, relax, check email, send text
3 messages, play video games, draw, etc.

4 The declarants also listed the account for which they work all or almost all of their hours. The
5 96 declarants listed approximately 64 different accounts.

## II. Facts regarding the wage statement claim

Non-party Commercial Data Corporation ("CDC") creates employee wage statements for defendant. Qualls Decl. Ex. H (Essary Depo.) (Doc. 102-2) at TR 13:13–13:25. The last time CDC modified the program that it uses to create these statements was in 2000. *Id.* at TR 12:7–12:11.

Plaintiff McFarland worked over twelve hours on at several occasions in 2005, 2006, 2007, and 2008. His pay stubs do not separately list the hours over twelve that he worked, or the rate of pay to which he was entitled for those hours. *See, e.g.,* McFarland Decl. (Doc. 109, Ex. B), Ex. 1, JM 0248 & Ex. 6, JM0381. According to the pay stubs plaintiff McFarland submitted, the most recent day that he worked over twelve hours was November 30, 2008.[4]

On May 14, 2009, plaintiff Temple sent notice to the California Labor Workforce Development Agency ("LWDA"), specifically mentioning that he was bringing a civil action for his uniform and rest period claims. Bern Decl. (Doc. 118-2), Ex. F. He did not specifically state that his wage statements were inaccurate. However, he did say that "said conduct . . . violates each Labor Code section as set forth in California Labor Code § 2699.5." *Id.* Section 2699.5 of the Labor Code references subdivision (a) of Section 226, and Section 226(a) requires wage statement to show "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

On May 12, 2010, the day after plaintiffs sought leave to file the second amended complaint, plaintiff McFarland sent his own LWDA notice. It specifically alleges that defendant failed to provide

---

[4] Plaintiffs' motion for class certification says that plaintiff McFarland worked longer shifts in 2010 and 2009. However, it appears that these are typographical errors, as the documents that plaintiffs cite in support list dates in 2005 and 2008, respectively. *Compare* Pl. Mot. for Class Cert. at 12–13 *with* McFarland Decl. Ex. 1, JM 0248 & Ex. 6, JM 0381.

accurate wage statements in violation of Labor Code Section 226. Bern Decl. (Doc. 118-2) Ex. F.

## **LEGAL STANDARD**

The decision whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23 ("Rule 23"). *See* Fed. R. Civ. P. 23; *Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003). A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, as well as at least one of the requirements of Rule 23(b). *See* Fed. R. Civ. P. 23; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

A plaintiff seeking certification must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b).

In determining the propriety of a class action, the court must focus solely on whether the requirements of Rule 23 are met, not whether the plaintiff has stated a cause of action or will prevail on the merits. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003). Accordingly, the court must accept as true the substantive allegations made in the complaint. *In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982). However, although the court may not require preliminary proof of the substance of the plaintiff's claims, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements," but may also "consider the legal and factual issues presented by plaintiff's complaint." 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 7.26 (4th ed. 2005). The court should conduct an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

**DISCUSSION**

**I.      The rest period claim**

California mandates that employers "authorize and permit" their employees to take ten minute rest periods for every four hours worked. *See* Cal. Labor Code § 226.7(a); 8 Cal. Code Reg. § 11040(12)(A). If an employer fails to do so, it must pay the employee an additional hour of wages per rest period not provided. *See* Cal. Labor Code § 226.7(b); 8 Cal. Code Reg. § 11040(12)(B). An Opinion Letter from California's Division of Labor Standards Enforcement further explains that the ten minutes must be consecutive, and the rest period must be "duty-free." DLSE Opinion Letter of Feb. 2, 2002, Re: Rest Period Requirements. If "the nature of the work prevents an employee from being relieved of all duty," and if the employee consents in writing, an employer is allowed to provide an on-duty lunch period instead of an off-duty lunch period. *See* 8 Cal. Code Reg. § 11040(11)(A). No such exception exists for rest periods.

Plaintiffs allege that defendant violated their right to ten minute rest periods and ask the Court to certify a class of plaintiffs to proceed with that claim. The proposed class would consist of all persons employed by defendant in California between May 14, 2005, and the present, who worked as the sole security officer at a client work site for a shift of a certain length. There is a question of law common to this class: whether or not the class members were permitted to take a duty-free rest period as required by California law. The main question that the parties disagree about is whether common questions predominate. Fed. R. Civ. P. 23(b)(3).[5]

Plaintiffs argue that common factual questions predominate, because they will be able to rely primarily on common, written policies, as common proof of a rest period violation. Plaintiffs argue that the GORI, the MPSs, and the signed off-duty meal break waiver all interact to show one thing: security officers working alone were not allowed to leave their posts, and indeed that they were "On Duty" as defined by the GORI at all times during their shift. This means that solo shift employees were required to remain alert to site conditions and respond as required, even during their ten minute rest periods, and this is contrary to California law. They could not sleep, they could not leave their post, they could not

---

[5] Plaintiffs do not argue that they are able to satisfy the requirements of Rule 23(b)(1) or Rule 23(b)(2).

8

block their ability to hear.

Defendants argue that plaintiffs will not be able to prove their case by relying on the existence of common policies. Rather, defendants argue, there is a narrow California-specific policy about rest periods that complies with California law on its face. The security officers were "subject to recall," defendants say, but that just means that they were on call, needed to respond in case of emergency, and in the uncommon instance that their rest periods were interrupted they would receive another uninterrupted rest period. Additionally, defendants argue, they have declarations from ninety-six potential class members who were all provided lawful rest periods that fit defendant's description of rest periods "subject to recall"—and who all took them much of the time. Thus, even if plaintiffs have isolated one general question of whether the narrow California-specific policy displaced the general, national always-on-duty police, that question does not have a common answer. Rather the question would need to be asked and asked again on an employee-by-employee, site-by-site, or supervisor-by-supervisor basis.

After viewing the evidence presented by each party, the Court concludes that plaintiffs have not met their burden to establish that common issues of law and fact will predominate. The parties agree generally on what California law requires ("on call" rest period is acceptable, "on duty" is not). They disagree about what defendant actually permits. Therefore, although the same general legal question frames the case, the primary questions will be factual. The parties also agree generally on what their written policies say. They disagree about how the written policies interact in practice. This is the disagreement that is at the heart of this case

In this case, how the written policies interact in practice is not one question but many, and plaintiffs have not shown a way that those questions would be susceptible to common proof. Contrary to plaintiffs' assertions, they will not be able to prove their claim by arguing that the written policies are facially insufficient. From 2005 to 2008, California employees were informed in writing that they were required to take "off-duty rest breaks." East Decl. Ex. B at 4. After 2008, California employees were informed more specifically that the rest period policy existed "regardless of any other instructions." *Id.* Ex. A at 3–4. Moreover, the later policy explained that, "[i]n order to ensure that officers remain alert, Guardsmark encourages officers to take all of their allotted rest periods for the full

9

1 ten minutes each," thus *contrasting* the officers' activity during the rest period with the general
2 requirement that security officers remain alert. *See id.*

3 Although the off-duty lunch waivers would help plaintiffs prove their case by common proof,
4 plaintiffs have not convinced the Court that the waivers are as powerful a piece of evidence as plaintiffs
5 believe. First, it is not clear how often solo shift workers ate lunch on duty—only that they were asked
6 to consent to doing so. And the inference that plaintiffs ask the Court to make from the waivers (which
7 they later will later ask the trier of fact to make) is not a uniformly logical inference.[6] Compare an
8 officer who must check in every truck or employee entering a site, with an officer who must walk a
9 certain number of circuits every hour to monitor the perimeter of a site. It might be impossible for either
10 to stop working for half an hour to eat lunch. But the latter employee might easily be able to take a ten
11 minute off-duty rest period without worry.

12 The declarations in this case also support the Court's conclusion that plaintiffs have not carried
13 their burden to show that common issues will predominate. A class action defendant does not win a
14 Rule 23(b)(3) battle merely by presenting more declarations than the plaintiffs. In this case, however,
15 while plaintiffs have presented fourteen declarations that seem to show a common policy, the
16 declarations do not support plaintiff's argument that the class claim is susceptible to common proof.
17 Many of the declarations focus on how individual supervisors explained the interaction of the different

---

[6] Plaintiffs argue that the reference to the "nature of the work" in the waivers means unequivocally that there is a security requirement that a security officer be "on post" at all times. Pl. Reply at 1. For this proposition, plaintiffs cite the deposition testimony of Coley Buellesfeld. Although the deposition transcripts in this case are exceptionally difficult to understand at times, due in no small part to the fact that defendant's attorney objected at least once to almost every question that was asked during each deposition, it does seem that Buellesfeld in fact testified that *some* posts served by solo shift workers needed to be manned at all time, not that all or even most posts did. The portion of the Buellesfeld transcript cited by plaintiffs reads as follows:

> Q. What are the security duties that are such that a meal period must be on duty?
> MR. BERN: Objection. Overbroad, vague and ambiguous, calls for speculation.
> BY MR. QUALLS:
> Q. You can answer.
> MR. BERN: And outside the scope of the designated topics and outside the scope of the litigation.
> THE WITNESS: Repeat the question now.
> (Record read by the reporter)
> THE WITNESS: It would depend – it would be – it would depend on the security requirements that – for example, that the post could not be – has to be manned at all times. It depends on the post. Everyone is – I mean not everyone, but many are different.

Qualls Suppl. Decl. Ex. A at TR 27:25–28:16.

written policies to the declarant. Most of the declarations are written in extremely broad terms, raising the question of what many of the declarants mean when they say that solo shift workers must remain "alert" to site conditions—and perhaps more importantly, what the supervisors meant who communicated that oral policy. Moreover, half of the declarations are written by employees who were supervised at one point or another by Mike Kahrimanian, raising the distinct possibility that Mike Kahrimanian gave idiosyncratic directions to his employees based on a personal misunderstanding of defendant's policies.

Defendant's declarations, in contrast, are from 96 employees who worked primarily on 64 different accounts. Many of the declarants state that they were permitted to do activities that are not consistent with a policy requiring guards to remain alert to site conditions (as opposed to remaining on call to respond in case asked to go off break), such as leaving their post, sleeping, listening to music, etc.

Finally, the Court notes that the parties have stipulated to the numerosity requirement, and perhaps because of this, plaintiffs did not provide the Court with any estimate of the number of potential class members in their briefing. Nor did plaintiff provide the Court with any estimate of how many class members were supervised by Mike Kahrimanian, or might have worked in similar situations to plaintiffs' fourteen declarants. At the hearing, plaintiffs stated that there would be perhaps 5,000 people in the class; defendant stated that the number would likely be smaller; but neither party provided a source for its estimate. Plaintiffs make it impossible for the Court to know whether the 96 declarations presented by defendant are a sizable portion of the class or not, and plaintiffs make it impossible for the Court to know how similarly situated plaintiffs' declarants are to the remaining absent class members.

The Court will not certify the rest period class.

## II.  Wage statement claims

California Labor Code Section 226(a) requires wage statements to show "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." California law also requires that employees be paid double their regular rate of pay for every hour worked over twelve hours in a single day. Cal. Labor Code § 510. Finally, California

11

requires that an "aggrieved employee or representative . . . give written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation," *before* bringing a civil action based on violation of Section 226(a) of the Labor Code. Cal. Labor Code §§ 2699.3, 2699.5. Courts have held, and the parties agree, that a one-year statute of limitations applies to an inaccurate wage statement claim. *See, e.g., Harris v. Vector Marketing Corp.*, No. C-08-5198, 2010 WL 56179, * 3 (N.D. Cal. Jan. 5, 2010) (citing Cal. Code Civ. Pro. § 340(a) and cases).

The second subclass would make claims based on defendant's alleged failure to provide accurate wage statements with respect to overtime. *Id.* Only plaintiff McFarland brings this claim, and he argues that the wage statements produced by defendant do not have a double over time column—that is, a separate statement of the number of hours worked for which the employee is entitled under California law to two times the employee's regular rate of pay.[7]

Defendant's main argument in opposition to certification of this subclass is that plaintiff McFarland cannot actually bring a claim for violation of Section 226(a) of the Labor Code, and therefore, at the very least, he fails to meet the adequacy requirement of Rule 23(a). The filing of an administrative LWDA notice is a prerequisite of bringing suit. Plaintiff McFarland did not file notice until over a year after his last 12-hour-plus shift. Thus, even if the second amended complaint could be said to relate back to the first (and defendant believes it could not), it would not matter, because the statute of limitations is calculated from the time that the precondition of suit is met.

Plaintiff's only argument in response is that the second amended complaint relates back to the first, and the first tolled the statute of limitations for all class members.

Several courts have explained that

> A subsequent pleading which sets out the subsequent performance of a condition precedent to suit cannot relate the time of performance of the condition back to the time of the filing of the original complaint and thereby toll the running of the period of limitation, since the rule of relation back does not operate to assign the performance of a condition precedent to a date prior to its actual occurrence.

*Harris*, 2010 WL 56179, at * 3; *accord Moreno v. Autozone, Inc.*, No. C05-04432, 2007 WL 1650942,

---

[7] Plaintiff McFarland does not argue that defendant failed to pay him the appropriate wage.

12

at *2 (N.D. Cal. June 5, 2007); *Wilson v. People ex rel. Dep't of Public Works*, 271 Cal. App. 2d 665, 669 (1969). That is to say, a condition precedent is a condition precedent. Thus, it would seem, in order for plaintiff McFarland to be permitted to calculate the statute of limitations from the date of the filing of the first amended complaint, he needs to show not merely that the first amended complaint gave defendant notice of his claim, but also that the condition precedent to suit had already been met. This raises the question of whether plaintiff Temple's LWDA notice allows plaintiff McFarland's claim to proceed now.

In other contexts, where a *single* plaintiff's administratively exhausted claims developed or changed during litigation, courts have looked to see whether (1) the claim in the law suit comes "within the scope" of the original exhausted claim or (2) an untimely-filed administrative claim can "relate back" to a timely-filed administrative claim.[8]

For example, discussing California's Fair Employment and Housing Act ("FEHA"), which also has an administrative exhaustion requirement, the California courts and the Ninth Circuit explain that the allegations in a civil suit are within the scope of an administrative complaint if they "'can reasonably be expected to grow out of the charge'" made to the administrative agency. *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001) (quoting *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal. App. 4th 846, 859 (1994)); *see also Sandhu*, 26 Cal. App. 4th at 859 (adopting in FEHA cases and calling the Ninth Circuit's EEOC test a "'like or reasonably related' standard"). In *Rodriguez*, the Ninth Circuit explained that a lawsuit for disability discrimination is not within the scope of an administrative claim for race discrimination. *Id.* "The two claims involve totally different kinds of allegedly improper conduct, and investigation into one claim would not likely lead to investigation of the other." *Id.*

Next, the *Rodriguez* court considered whether an untimely-filed administrative claim could be said to relate back to an original, timely filed claim. The court discussed the two basic standards used

---

[8] It appears that it must be decided on a statute-by-statute basis whether the relation-back doctrine is applicable to administrative charges, based at least in part on the statute's purpose. *See, e.g., Rodriguez v. Airborne Express*, 265 F.3d 890, 898 (9th Cir. 2001) (accepting state agency's conclusion that the relation-back doctrine is applicable to administrative charges filed pursuant to California's Fair Employment and Housing Act); *Peterson v. City of Wichita*, 888 F.2d 1307, 1308-09 (10th Cir. 1989) (upholding regulation permitting EEOC to allow relation-back of amendments, and listing other courts in accord). The Court assumes, without deciding, that the relation-back doctrine is applicable to this part of the California Labor Code.

13

by different circuits when dealing with the relation back of an EEOC complaint. Some prohibit amendments introducing a new theory of recovery. Others permit such amendments, as long as the new legal theory is based on the same general facts. The Ninth Circuit decided to use a variation on the latter test, requiring in addition that "the factual allegations . . . be able to bear the weight of the new theory added by amendment." *Id.* at 899.

The tests used in the FEHA and EEOC context are fairly permissive. The parties have not briefed, and the Court need not rule, on whether the statute here should be interpreted to permit such broad expansion and development of exhausted claims. Even under the FEHA/EEOC standards, and even assuming that plaintiff McFarland can rely on an administrative LWDA notice filed by another Guardsmark employee, plaintiff McFarland's double-time wage statement claim cannot be said to come "within the scope" of the original exhausted claims, and his administrative filing cannot be said to "relate back" to the timely-filed LWDA notice. In his LWDA letter, plaintiff Temple contended

> that his employer Guardsmark failed to properly compensate him, and similarly aggrieved Guardsmark employees, for uniform maintenance as required by California Labor Code section 2802, and that Guardsmark failed to provide him and other security guards with off-duty rest periods in violation of California Labor Code § 226.7. Said conduct, in addition, violates each Labor Code section as set forth in California Labor Code § 2699.5.

Bern Decl. (Doc. 118-2), Ex. F. Investigation into these two claims would not likely lead to an investigation as to whether Guardsmark pay statements accurately list double-overtime hours and compensation. Nor do the factual allegations in the LWDA letter "bear the weight" of this new theory.

On this record, the Court concludes that plaintiff McFarland is not an adequate representative of the class claims, and therefore the Court will not certify this class.

///

14

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to deny class certification and DENIES plaintiff's motion for class certification.  (Docs. 88 & 102.)

**IT IS SO ORDERED.**

Dated:  February 22, 2011

SUSAN ILLSTON
United States District Judge